UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BONNY HERNANDEZ,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    04-CV-455S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


        1.      Plaintiff Bonny Hernandez challenges an Administrative Law Judge's ("ALJ")

determination that he is neither entitled to disability insurance benefits ("DIB") nor eligible

for Supplemental Security Income ("SSI") under the Social Security Act ("the Act").  Plaintiff

alleges that he has been disabled since January 13, 2000, due to a back condition and

depression.  He met the disability insured status requirements of the Act for purposes of

entitlement to DIB only through March 31, 2002.  Plaintiff's insured status for DIB is not,

however, a consideration for SSI eligibility.


        2.      Plaintiff filed an application for DIB and SSI on June 19, 2000 and June 28,

2001, respectively.  His applications were denied initially and on reconsideration.  Pursuant

to Plaintiff's request, an administrative hearing was held before ALJ Marilyn D. Zahm on

October 7, 2003, at which time Plaintiff, his paralegal, and a Spanish interpreter appeared.

The ALJ considered the case *de novo*, and on January 29, 2004, issued a decision finding

that Plaintiff was not disabled.  On April 13, 2004, the Appeals Council denied Plaintiff's

request for review.  Plaintiff filed the current civil action on June 17, 2004, challenging

Defendant's final decision.[1]

3.      On January 21, 2005, and March 11, 2005, respectively, the Government and Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).    Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla,"and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.   See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[1]The ALJ's January 29, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

also include that which detracts from its weight." <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health and Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.    In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (R. at 32);[2] (2) Plaintiff's degenerative disc disease and depression are "severe" impairments within the meaning of the Act (R. at 33); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 33); (4) Plaintiff retained the residual functional capacity for light unskilled

---

[2] Citations to the underlying administrative record are designated as "R."

work in that he could lift and carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for up to four hours and sit for about six hours in an eight-hour work day, but his ability to push or pull is limited in his right lower extremities, and his postural activities must be limited to occasional frequency (R. at 33); and (5) Plaintiff was unable to perform any of his past relevant work.  (R. at 33).  Further, the ALJ concluded that Plaintiff's residual functional capacity to perform substantially all of the full range of light work had not been compromised by any nonexertional limitations.  (R. at 33).  Considering Plaintiff's age, education, work experience, and residual capacity for sedentary work, the ALJ determined that the Medical-Vocational Rules directed a finding of "not disabled."  (R. at 31-33).  Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of her decision, January 29, 2004.  (R. at 20, 32-33).


10.     Plaintiff's first challenge to the ALJ's decision is that she interjected her lay medical opinion and failed to consider the opinion of Plaintiff's treating physician, Dr. Cheng.  In this regard, Plaintiff contends that the ALJ failed to properly apply the treating physician rule because she failed to give special deference to Dr. Cheng's restrictive assessment of Plaintiff's residual functional capacity.


11.     According to the "treating physician rule,"[3] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

12.     Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.   Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

13.     Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of Dr. Cheng's opinion in light of the objective medical findings in the record.   Rather, the ALJ's decision reflects her extensive evaluation of all the medical evidence in the record.  (R. at 22-30).  Ultimately, the ALJ relied on, among other things, the determination by Dr. Hernandez, the state medical consultant and a neurologist, that Plaintiff retained the residual functional capacity for light work.  (R. at 23, 31, 221-28).  In addition, the ALJ credited the mental residual functional capacity assessment of Dr. Umpierre, a state agency psychological consultant and clinical psychologist, who

determined that Plaintiff was not significantly limited or only moderately limited in the areas of understanding and memory, sustained concentration and persistence, or social interaction and adaptation.  (R. at 253-56).  With respect to Dr. Umpierre's assessment, the ALJ found it reflected the weight of the record evidence.  (R. at 30).

The ALJ's reliance on the assessments of Drs. Hernandez and Umpierre was not, as Plaintiff suggests, inappropriate.  It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2).  Such reliance is particularly appropriate where, as here, the opinion of the state agency physician or psychologist is supported by the weight of the record evidence, including the objective medical findings of Plaintiff's own treating physicians.

Dr. Cheng's opinion, on the other hand, was both unsupported and inconsistent with the record as a whole.  As set forth in her decision, the ALJ afforded little weight to Dr. Cheng's residual functional capacity assessment because it was based on Plaintiff's subjective complaints and not upon objective clinical findings.  (R. at 28, 373-77).  By way of example, Dr. Cheng plainly indicated that the determinations that Mr. Hernandez was limited to lifting and carrying ten pounds, to sitting for only four hours and to standing and walking for only one hour during an eight hour period, that he can only bend and climb occasionally, and can never walk or crawl were all based on Plaintiff's subjective complaints or estimations.  (R. at 373-77).  As set forth in the regulations, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well supported.  See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

It is equally well settled that the less consistent an opinion is with the record as a

whole, the less weight it is to be given.  See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). In this Court's view, Dr. Cheng's restrictive assessment is clearly inconsistent with the findings of Drs. Hernandez, Paroski, Martin-Mravik, Huang, Muniz, and Acevedo-Marty. By way of example, Dr. Paroski, one of Plaintiff's treating physicians noted on September 10, 2001, that Plaintiff's coordination was intact, motor strength was at full grade, that his gait was slow but that his balance was normal.  (R. at 348).  Another physician, Dr. Huang, found that Plaintiff's range of motion in his upper and lower extremities was normal during his May 13, 2002 examination.  (R. at 262).  Similarly, Dr. Muniz reported on October 5, 2000, that Plaintiff exhibited no weakness or atrophy of the lower extremities.  (R. at 212). In addition, Dr. Acevedo-Marty, a neurologist, found that Plaintiff  had full motor strength at all extremities in a report dated November 4, 2000.  (R. at 215-17).  The record also reflects that none of Plaintiff's treating physicians, aside from Dr. Cheng, recommended back surgery as an appropriate option for Plaintiff.  (R. at 215, 374, 427, 430).

Based on the foregoing, this Court finds that it was not improper for the ALJ to acknowledge Dr. Cheng's medical assessment, but ultimately predicate her disability determination on the objective medical results and the consistent medical opinions contained in the record.  It is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts in the record.  See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).  Under the circumstances presented in this case, it cannot be said that the ALJ arbitrarily substituted her own judgment for that of Plaintiff's treating physician.  Rather, this Court finds that the ALJ appropriately afforded less weight to Dr. Cheng's assessment, which was based on Plaintiff's subjective complaints, than she afforded the medical opinions which were supported by objective clinical findings in the record.

14.     Plaintiff's second argument is that it was improper for the ALJ to use the Medical Vocational Guidelines ("the GRIDS") as a framework for her decision.  Generally, when a claimant's nonexertional impairments significantly diminish his or her ability to work such that he or she is not able to perform the full range of employment indicated by the GRIDS, then the Commissioner must introduce the testimony of a vocational expert, or other similar evidence, that jobs exist in the national economy which claimant can obtain and perform.  Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986).  Specifically, Plaintiff argues that his pain and depression were nonextertional limitations which should have precluded the ALJ's use of the GRIDS.

However, the ALJ specifically found that the objective medical evidence did not support Plaintiff's subjective complaints of pain.  (R. at 30, 33).  Specifically, the ALJ gave careful consideration to Plaintiff's normal daily activities, which included driving, grocery shopping, dressing and bathing himself, visiting his mother-in-law, and attending religious services.  (R. at 41, 43, 46-47, 236).  Moreover, she considered Dr. Huang's report that the EMG/NCV results did not support a finding of peripheral neuropathy in the upper and lower extremities, (R. at 263-64), and Dr. Muniz's determination that Plaintiff had no lower extremity weakness or atrophy, (R. at 212), as well as Dr. Hernandez's conclusion that Plaintiff's allegations of severe functional limitation were not supported by the medical evidence.  (R. at 226).

With respect to pain management, Plaintiff testified at the hearing that he took four tablets of Tylenol with Codeine a day when his pain was very intense.  (R. at 54).  At the hearing, however, Plaintiff handed the ALJ a bottle of Tylenol with Codeine, which had been filled with 100 tablets four months prior but was still half full.  (R. at 54).  This was inconsistent with Plaintiff's subjective complaints of consistent and debilitating pain.  Accordingly, the ALJ exercised her discretion to evaluate the credibility of the Plaintiff's

testimony and render an independent judgment regarding the extent of his pain based on the medical findings and other evidence.  See e.g., Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 186 (2d Cir. 1984).  In this particular case, the ALJ found Plaintiff's testimony regarding his pain symptoms incredible, a determination within her  province as the trier of fact.  See e.g., Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

Similarly, based on the record evidence, the ALJ determined that Plaintiff's depression did not constitute a nonextertional limitation. (R. at 30, 33).  This conclusion is supported by Dr. Umpierre's findings that Plaintiff's mental limitations were insignificant or moderate  (R. at 253-56),  Dr. Torrado's favorable mental assessment (R. at 237), as well as Lake Shore Behavioral Health Center's evaluation, which indicated that on November 26, 2001, Plaintiff's speech was clear and coherent, he was cognitively oriented, he did not experience hallucinations, and he exhibited good memory, average intelligence and a fair mood.  (R. at 365).  Given the sufficiency of Plaintiff's mental assessment, the ALJ decided not to purchase an additional consultive psychological exam, a decision within her sole discretion.  See 20 C.F.R. §§ 404.1517, 404.1519a - 404.1519f, and 419.919a- 416.919f.
 Based on the foregoing, this Court finds that substantial evidence supports the ALJ's finding that Plaintiff's capacity for light work had not been compromised by nonextertional limitations related to pain and depression.  Accordingly, the ALJ was not required to enlist the aid of a vocational expert to establish that jobs exist in the national economy that Plaintiff could perform.

16.    After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to this Court that the ALJ

thoroughly examined the record, afforded appropriate weight to all of the medical evidence, including Plaintiff's treating physician, and appropriately relied on the GRIDS in rendering her decision that Plaintiff is not disabled.  Accordingly, finding no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: September 25, 2005
        Buffalo, New York


                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge